739 F.Supp. 551 (1990)
Marie E. WIRSING, Plaintiff,
v.
BOARD OF REGENTS OF the UNIVERSITY OF COLORADO and Each of its Members, Kathleen Arnold, Richard Bernick, Robert Caldwell, Peter Dietze, Lynn Ellins, Harvey Phelps, Norwood Robb, Roy Shore, and David Winn; William Grady, Dean of the School of Education, University of Colorado at Denver; John Buechner, Chancellor of the University of Colorado at Denver; and E. Gordon Gee, President of the University of Colorado, Defendants.
Civ. A. No. 90-B-38.
United States District Court, D. Colorado.
June 28, 1990.
*552 Larry F. Hobbs, Hornbein MacDonald Fattor and Hobbs, P.C., Denver, Colo., for plaintiff.
Beverly Fulton, Asst. University Counsel, Special Asst. Atty. Gen., Denver, Colo., for defendants.

MEMORANDUM OPINION AND ORDER
BABCOCK, District Judge.
The matter is before me on cross-motions for summary judgment. Plaintiff, Dr. Marie Wirsing (Dr. Wirsing) argues in her motion that, as a matter of law, the University of Colorado at Denver's (the University) standardized student evaluation policy interferes with her right to academic freedom under the First and Fourteenth Amendments to the United States Constitution. The University defendants move for summary judgment on the grounds that the concept of academic freedom does not encompass Dr. Wirsing's right to refuse to follow University regulations and that her refusal to comply with the requirement is not protected from sanction. Dr. Wirsing alternatively contends that genuine issues of material fact exist as to whether standardized student evaluation forms are necessary to evaluate her teaching. Jurisdiction exists pursuant to 28 U.S.C. § 1331. The issue is narrow and it has been briefed by both parties. Oral argument was held Tuesday, June 19, 1990.
Dr. Wirsing is a tenured professor of education at the University's Denver campus, where she has been continuously employed since 1966. In April 1986, the Board of Regents (Regents) enacted an evaluation system to provide information to students, faculty, departmental administration, and the University's administration. Under the system, each campus was required to develop an evaluation form for evaluating teacher performance and awarding yearly merit salary increases. In 1987, the Denver campus developed such a form.
Dr. Wirsing teaches in her classes that teaching and learning cannot be evaluated by any standardized approach. Hence, she has refused to use the standardized course evaluation form, and has used instead a non-standardized student evaluation form used prior to the Regents' 1986 requirement.
In May 1988, Dr. Wirsing's 1987 teaching performance was evaluated by a faculty committee and given the highest rating of 5. Similarly, Dr. Wirsing's 1988 performance was evaluated by her Division Chair, Mark Clarke. He recommended that she receive a 2.5% merit increase in 1989. In both years, William Grady, Ed.D. (Grady), the Dean of the School of Education at the University, refused to award Dr. Wirsing a merit salary increase for her refusal to administer the Regents' evaluation form. The Chancellor and President agreed with Grady's decision, and the Regents' who have considered Dr. Wirsing's complaints, have refused to exempt her from the rule.
Dr. Wirsing requests that this court enjoin the University from administering the Regents' evaluation form in her classes and that it be required to award her merit salary increases despite her refusal to comply with the Regents' rule.
The term academic freedom "is used to denote both the freedom of the academy to pursue its end without interference from the government ... and the freedom of the individual teacher ... to pursue his ends without interference from the academy; and these two freedoms are in conflict." Piarowski v. Illinois Community College Dist. 515, 759 F.2d 625, 629 (7th Cir.), cert. denied, 474 U.S. 1007, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Thus, while the Supreme Court has often expressed a reluctance to intervene in the prerogatives of state and local educational institutions, it *553 has remained committed to the protection of their academic freedom, "a special concern of the First Amendment." Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967).
The "four essential freedoms" of the university are to determine for itself on academic grounds: 1) who may teach; 2) what may be taught; 3) how it shall be taught; and 4) who may be admitted to study. Sweezy v. New Hampshire, 354 U.S. 234, 263, 77 S.Ct. 1203, 1218, 1 L.Ed.2d 1311 (1957). The administration of the university rests not with the court, but with the administrators of the institution. Parate v. Isibor, 868 F.2d 821, 827 (6th Cir.1989). Moreover, "... school authorities can sanction conduct materially and substantially disrupting school discipline, even though that conduct [is] perhaps not unlawful." Franklin v. Atkins, 409 F.Supp. 439, 449 (D.Colo.1976), aff'd, 562 F.2d 1188 (10th Cir.1977), cert. denied, 435 U.S. 994, 98 S.Ct. 1645, 56 L.Ed.2d 83 (1978). Because the university must remain independent and autonomous to enjoy academic freedom, the federal courts are reluctant to interfere in the internal daily operations of the academy which do not directly and sharply implicate basic constitutional values. Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). However, the courts have also afforded substantial protection to the First Amendment freedoms of individual university professors. See Sweezy v. New Hampshire, supra; Fowler v. Board of Educ., 819 F.2d 657 (6th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 502, 98 L.Ed.2d 501 (1987).
Dr. Wirsing argues that the standardized teaching evaluation forms are contrary to her theory of education. Hence, by being forced to give her students the standardized form, the University is interfering arbitrarily with her classroom method, compelling her speech, and violating her right to academic freedom. I disagree.
Here, the record is clear that Dr. Wirsing was not denied her merit salary increase because of her teaching methods, presentation of opinions contrary to those of the university, or otherwise presenting controversial ideas to her students. Rather, she was denied her merit increase for her refusal to comply with the University's teacher evaluation requirements. As one court has stated:
Academic freedom is not a license for activity at variance with job related procedures and requirements, nor does it encompass activities which are internally destructive of the proper function of the University or disruptive of the education process.
Stastny v. Bd. of Trustees, 647 P.2d 496, 504 (Wash.App.1982), cert. denied, 460 U.S. 1071, 103 S.Ct. 1528, 75 L.Ed.2d 950 (1983). Further, although Dr. Wirsing may have a constitutionally protected right under the First Amendment to disagree with the University's policies, she has no right to evidence her disagreement by failing to perform the duty imposed upon her as a condition of employment. Shaw v. Bd. of Trustees, 396 F.Supp. 872, 886 (D.C.Md. 1975), aff'd, 549 F.2d 929 (4th Cir.1976).
While a public college faculty member must be free to exercise [her] right to speak on issues of public importance without fear of dismissal from [her] employment, no similar guarantee exists to encourage actions on [her] part which entail failure by [her] to perform duties reasonable and regularly required to be performed by [her] as part of the responsibilities of a faculty member.
Id.
In Parate supra, the Sixth Circuit held that because the assignment of a letter grade is intended to send a specific message to the student and is therefore symbolic, a professor's communicative act of assigning the grade is entitled to some measure of First Amendment protection. Id. at 828. The Court further held that, because giving a grade is protected speech, a professor may not be compelled by university officials to change a grade that the professor previously assigned to her student. Id. The Court specified that it was the act of "ordering Parate to change the grade, rather than the act of giving Student `Y' a different grade than Parate desired" *554 that gave rise to the constitutional violation. Id. at 829.
Relying on Parate, Dr. Wirsing argues that by requiring her to use the standardized evaluation form, the University is regulating her course content and is interfering with her right to academic freedom. Again, I disagree.
Under the Regents' policy, Dr. Wirsing is required to set aside class time for the administration of the forms, bring the forms to class, provide No. 2 pencils, and select a student to distribute and collect the forms. However, Dr. Wirsing is not required to distribute the forms herself. In fact, Dr. Wirsing is required to leave the room while the students complete the evaluation forms. Hence, she is not communicating an idea to her students by allowing them to complete the evaluation forms.
Moreover, the evaluation forms are not expressive of a content-based regulation. See Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957). Each form invites written comments and has a choice selection "not applicable" that Dr. Wirsing's students may select if the form, as Dr. Wirsing contends, is irrelevant to her course. Significantly, as the University concedes, Dr. Wirsing may use the form as an example of what not to do; she may criticize openly both the form and the University's evaluation form policy. Further, the evaluation forms are not distributed until the course has been completed substantially. Although the form is contrary to what Dr. Wirsing teaches, her free speech is not implicated by using the form. Accordingly, I conclude that the evaluation forms represent a University policy and procedure unrelated to course content that in no way interferes with Dr. Wirsing's academic freedom.
Dr. Wirsing further argues that a regulation which interferes with academic freedom is not reasonable. Because I conclude that the University's standard evaluation forms do not interfere with Dr. Wirsing's right to academic freedom, I need not address this issue.
Finally, Dr. Wirsing argues that genuine issues of fact exist as to whether the standardized student evaluation forms are necessary to evaluate her teaching. To the extent that Dr. Wirsing asserts that issues remain as to whether the evaluation form has empirical value, such issues are not material here. Fed.R.Civ.P. 56.
Teacher evaluation is part of the University's own right to academic freedom. Sweezy v. New Hampshire, 354 U.S. at 263, 77 S.Ct. at 1218. Although there may be other available and even more appropriate methods of teacher evaluation, the University has adopted the policy at issue here as its method of evaluation. Because the University's policy does not interfere with Dr. Wirsing's right to academic freedom, the University may require Dr. Wirsing to use its evaluation forms and it may withhold merit pay increases for her refusal to do so. See Shaw v. Bd. of Trustees, 396 F.Supp. 872 (D.C.Md.1975), aff'd, 549 F.2d 929 (4th Cir.1976).
Accordingly, it is ORDERED that the University defendants' motion for summary judgment is GRANTED.
It is FURTHER ORDERED that Dr. Wirsing's cross-motion for summary judgment is DENIED.